Janci Leigh RICKS, Appellant

v.

Jon Todd RICKS, Appellee.

No. 05–04–00976–CV.

Court of Appeals of Texas,
Dallas.

Aug. 12, 2005.

Janci Leigh Ricks, McKinney, pro se.

Vicki Thornton Redden, Law Office of Vicki Thornton Redden, Jeffrey Neil Bogost and Michael L. Brummett, Dallas, for Appellant.

Laurence A. Deplaza, Sheila O'Connor, Laurence A. DePlaza P.C., Brad M. Lamorgese and William J. Akins, Cooper & Scully, P.C., Dallas, for Appellee.

Before Justices WHITTINGTON, MOSELEY and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

This is an appeal from the denial of a motion for new trial in a divorce case.

Janci Leigh Ricks argues the trial court should have set aside the final decree and granted her a new trial because (1) the decree, which was based on a mediated settlement agreement, did not comply with section 6.602(a) of the Texas Family Code; (2) the mediated settlement agreement was obtained through her husband's fraud, misrepresentation, and breach of fiduciary duty; (3) the decree did not strictly conform to the terms of their mediated settlement agreement; and (4) newly discovered evidence of the value of a community asset warranted a new trial. We affirm.

## BACKGROUND

During discovery in this divorce proceeding, Jon gave Janci a verified inventory and appraisement listing as a community asset three shares in the Frisco Medical Center valued at $45,000 (based on his purchase price of $15,000 per share). The parties decided to mediate the case and, at that time, the parties' respective experts valued the three shares in the medical center at $60,000. During the mediation, the attorneys for Jon and Janci and the mediator conferred with the medical center's business manager about the shares' value and learned that another share sold three months earlier for $42,000. Based on this new information, the value of the three shares was changed to $126,000. The parties then reached an agreement concerning the division of their property and custody of their four children and signed a mediated settlement agreement.

The parties agreed Jon's attorney would prepare a draft of the agreed divorce decree based on the terms of the settlement agreement. After each party reviewed the proposed decree and made revisions, Jon appeared in court to finalize the divorce. He presented the court with an agreed decree of divorce which had been signed by Jon, Jon's attorney, Janci, and Janci's attorney. The court signed the decree that day.

That same day, Jon gave Janci a copy of their 2003 federal income tax joint return and asked her to sign it, which she did. Janci noticed the return included income of about $72,000 from "real estate, royalties, partnerships, S corporations, trusts, etc.," but the return did not include the supporting schedules for this entry. The next day, Janci says she went to their accountant's office for a copy of the schedules and learned that $36,000 of that amount was dividend income from the three shares in the medical center.

Janci filed a motion for new trial in which she argued Jon committed fraud and breached his fiduciary duty to her by misrepresenting the true value of the shares in the medical center. She argued that the true value was at least $500,000 and that, had she known this, she would not have agreed to the settlement because she should have received a substantially larger distribution from the community assets. Janci amended her motion for new trial and additionally asked the trial court to set aside the divorce decree because it did not comply with the mediated settlement agreement.

At the hearing on her motion, Janci testified Jon did not list the medical center as an income-producing business in his inventory and appraisement. But she admitted that she received dividend checks related to the medical center at various times prior to mediation. Janci's attorney argued the true value of the medical center shares was not discovered until after the divorce decree had been entered and Janci discovered the shares produced dividend income of $36,000. Jon's attorney moved for a "directed verdict," arguing Janci had failed to show she was entitled to a new trial. The trial court granted the

"directed verdict" and denied the motion for new trial. This appeal followed.

## Standard of Review

Whether to grant or deny a motion for new trial is generally a matter addressed to the broad discretion of the trial court, and the trial court's action will not be disturbed on appeal absent an abuse of that discretion. *Cliff v. Huggins,* 724 S.W.2d 778, 778–79 (Tex.1987); *Nat'l Med. Fin. Servs., Inc. v. Irving Indep. Sch. Dist.,* 150 S.W.3d 901, 904 (Tex.App.-Dallas 2004, no pet. h.). A trial court abuses its discretion when it fails to correctly analyze or apply the law. *In re E.I. DuPont de Nemours & Co.,* 136 S.W.3d 218, 223 (Tex.2004). The test is whether the trial court acted in an arbitrary and unreasonable manner or without reference to any guiding principles. *Cire v. Cummings,* 134 S.W.3d 835, 838 (Tex.2004).

## Compliance with Family Code

In her first issue, Janci argues the trial court should have set aside the divorce decree, which was based on their mediated settlement agreement, and granted her a new trial because the decree failed to comply with section 6.602(a) of the family code. Section 6.602(a) states the court may refer the parties to mediation on the parties' written agreement or on the court's own motion. Tex. Fam.Code Ann. § 6.602(a) (Vernon Supp.2004–05). The court did not refer the parties to mediation; the parties agreed to mediation. But there is no evidence the parties agreed *in writing* to mediate the case. Accordingly, Janci argues the mediated settlement agreement is unenforceable.

For Janci to preserve this issue for appellate review, the record must show she made her complaint to the trial court by a timely request, objection, or motion. Tex. R.App. P. 33.1(a)(1). Here, Janci never complained to the trial court that the mediated settlement agreement was unenforceable because it failed to comply with the family code. As a result, Janci failed to preserve error on this issue. Tex.R.App. P. 33.1; *see In re B.L.D.,* 113 S.W.3d 340, 350 (Tex.2003); *Morales v. Morales,* 98 S.W.3d 343, 346 (Tex.App.-Corpus Christi 2003, pet. denied).

We overrule Janci's first issue.

## Fraud, Misrepresentation, and Breach of Fiduciary Duty

In her second issue, Janci argues the trial court should have set aside the divorce decree and granted her a new trial because Jon misrepresented the true value of the medical center shares during their mediation thereby committing fraud and breaching the fiduciary duty he owed to her.

In the divorce context, a claim for a breach of fiduciary duty is the same as a claim for fraud on the community. *Toles v. Toles,* 113 S.W.3d 899, 916 (Tex. App.-Dallas 2003, no pet.); *In re Marriage of Moore,* 890 S.W.2d 821, 827 (Tex.App.-Amarillo 1994, no writ). The fiduciary duty arising from the marital relationship ceases in a contested divorce when the husband and wife each hire independent attorneys to represent them. *Toles,* 113 S.W.3d at 916; *Boyd v. Boyd,* 67 S.W.3d 398, 405 (Tex.App.-Fort Worth 2002, no pet.). However, when a person is under a duty to disclose material information, but fails to do so, and leads the other party to a contract to rely on the misrepresentation, the resulting contract is subject to rescission because of the intentional nondisclosure. *Boyd,* 67 S.W.3d at 404–05.

Janci concedes she knew about the existence of the medical center shares prior to the mediation but claims Jon intentionally hid the shares' true value from her. Had

she known the true value of the shares, she states she would not have agreed to the terms of the settlement agreement.

■ Generally, the value to be accorded community property in a divorce proceeding is "market value." *R.V.K. v. L.L.K,* 103 S.W.3d 612, 618 (Tex.App.-San Antonio 2003, no pet.); *see Beavers v. Beavers,* 675 S.W.2d 296, 299 (Tex.App.-Dallas 1984, no writ). "Fair market value has been consistently defined as the amount that a willing buyer, who desires to buy, but is under no obligation to buy would pay to a willing seller, who desires to sell, but is under no obligation to sell." *Wendlandt v. Wendlandt,* 596 S.W.2d 323, 325 (Tex.Civ.App.-Houston [1st Dist.] 1980, no writ); *see City of Pearland v. Alexander,* 483 S.W.2d 244, 247 (Tex.1972).

In her motion for new trial, Janci made the bare assertion that because the 2003 federal income tax return showed a $36,000 dividend from the medical center shares, this is "prima facie evidence that the units' value is approximately $500,000.00, rather than the ... $126,000.00 set forth on the 'Settlement Spreadsheet.'"

However, there is no evidence in the record that Jon represented a value for the shares other than the value assigned by their experts and the comparable sales value arrived at during mediation. Prior to mediation, the parties' experts valued the medical center shares at a total of $60,000. During mediation, Jon and Janci's respective attorneys determined the market value of the medical center shares should be $126,000, based on a recent sale by an independent third party of one share for $42,000.

And Janci did not present any evidence of a different value. During the divorce proceedings, Janci hired a business valuation expert, but she presented no expert opinion or testimony about the value of the medical center shares. She did not file an expert affidavit supporting her conclusion that the shares were worth at least $500,000, and she stated no factual basis upon which she arrived at this conclusion. At the hearing on her motion, Janci did not call any witnesses to testify about the value of these shares, and she did not testify about or argue their value.

■ Janci's conclusory statement that "the value is approximately $500,000.00," without any evidentiary support, is not probative of the shares' market value. *See Coastal Transp. Co. v. Crown Central Petrol. Corp.,* 136 S.W.3d 227, 232 (Tex.2004). And there is no evidence in the record to support a valuation of the medical center shares at anything other than the $126,000 agreed to in the mediation. As the trial court stated,

> I can't see that the outcome is going to be any different, and [Janci] had a business valuation expert. She was aware of dividends. And, frankly, I can't tell if these are annual dividends or one-time distributions that happen every ten years. So I don't see how, in the evidence submitted to me, that we can make any judgment as to the value of those [shares] based on one year's dividends.

We conclude that Janci did not show that Jon misrepresented the true value of the medical center shares, and that the trial court did not abuse its discretion by denying her motion for a new trial.

We overrule issue two.

### COMPLIANCE WITH MEDIATED SETTLEMENT AGREEMENT

■ In her third issue, Janci argues the trial court should have set aside the divorce decree because it failed to comply with the terms of the mediated settlement

agreement when it (1) ordered child support to be paid twice a month instead of monthly as agreed, and (2) expanded the injunction contained in the mediated settlement agreement.

Janci signed the final decree, agreeing "as to content." And after it was entered, she never made the trial court aware of her specific complaints about the decree. She did not object to the decree in her first motion for new trial. In her affidavit attached to that motion Janci stated that after she signed the decree, she reviewed it and found discrepancies between it and the settlement agreement and called her attorney and demanded he make the changes. In her amended motion for new trial, she objected to the decree because it had "many provisions ... that did not comport with the [mediated settlement agreement]." She also argued that "[m]any of these changes were not made, things were added which she did not agree to, and there are other mistakes." Janci argued she would not have agreed to the final decree if she had known these changes had not been made. But she did not specify which changes she wanted that were not made, which things were added that she did not agree to, and which "other mistakes" were in the decree. At the hearing, she did not make the trial court aware of her specific objections to the decree or in what respects it failed to comply with the settlement agreement.

To preserve error for appeal, Janci must show she made the trial court aware of her specific complaint. Tex.R.App. P. 33.1(a)(1)(A)-(B). The record also must show the court either expressly or implicitly ruled on the complaint or refused to rule. Tex.R.App. P. 33.1(a)(2)(A)-(B). If the court refused to rule, the record must show that Janci objected to the refusal. Tex.R.App. P. 33.1(a)(2)(B). Here, Janci only generally objected to the decree as

containing mistakes but did not make the trial court aware of her specific objections. As a result, we conclude Janci failed to preserve error for our review. Tex.R.App. P. 33.1(a); *see In re B.L.D.,* 113 S.W.3d at 350; *McCain v. NME Hosp., Inc.,* 856 S.W.2d 751, 755 (Tex.App.-Dallas 1993, no pet.).

We overrule issue three.

### Newly Discovered Evidence

In her fourth issue, Janci argues the trial court should have granted her a new trial because of the newly discovered evidence that Jon misrepresented the value of the medical center shares. A party seeking a new trial on the ground of newly discovered evidence must show (1) new evidence has been discovered since the trial, (2) the failure to discover the evidence prior to trial was not because of lack of due diligence, (3) the evidence is not cumulative, and (4) the evidence is so material that it would probably produce a different result if a new trial were granted. *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983), *overruled on other grounds by Moritz v. Preiss,* 121 S.W.3d 715 (Tex. 2003); *Dallas Indep. Sch. Dist. v. Finlan,* 27 S.W.3d 220, 240 (Tex.App.-Dallas 2000, pet. denied).

Janci argues that the tax schedule showing $36,000 in income from the Frisco Medical Center is new evidence that shows Jon misrepresented the value of the medical center shares. As with her issue two, she is really arguing that she would not have agreed to settle the case on the terms in the judgment if she had known about the $36,000. Janci does not explain how the $36,000 income is evidence of a different value for the shares, or how it is new evidence when she was aware prior to mediation that the shares generated income. *See In re Marriage of Yarbrough,* 719 S.W.2d 412, 415 (Tex.App.-Amarillo

1986, no writ) (the new evidence should bring to light new and independent truth so decisive as to show justice not obtained).

We conclude the trial court did not abuse its discretion by denying Janci's motion for new trial. We overrule issue four.

### CONCLUSION

Having decided all of appellant's issues against her, we affirm the trial court's judgment.