NUMBER 13-08-00380-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


JANET RAE LOEHR, Appellant,


v.
 


ROLAND LOEHR, Appellee.

 


On appeal from the County Court at Law 


of Aransas County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Benavides 


Memorandum Opinion by Justice Rodriguez



 Appellant Janet Rae Loehr challenges the final decree of divorce entered by the trial
court enforcing a mediated settlement agreement (MSA or agreement) between Janet and
appellee Roland Loehr. See Tex. Fam. Code Ann. § 6.602 (Vernon 2006). By six issues,
Janet argues that: (1) the trial court erred in denying her motion for new trial because the
MSA was procured by fraud or, alternatively, was the product of mutual or unilateral
mistake; and (2) the trial court lacked jurisdiction to divide the couple's corporate assets
and out-of-state real property. We affirm.

I. BACKGROUND

 Janet filed for divorce from Roland in the spring of 2007. On January 28, 2008,
Janet and Roland spent the day negotiating a settlement agreement for their pending
divorce. Each party was represented by an attorney and an accountant during the
mediation process. At the end of the day, Janet and Roland and their attorneys signed the
MSA, which divided the couple's community and separate properties. The agreement
included, directly above the signature lines, an admonition reading and appearing as
follows: "THIS AGREEMENT IS NOT SUBJECT TO REVOCATION." By signing the MSA,
Janet and Roland agreed that "all related claims and controversies between them are
hereby settled in accordance" with the agreement and acknowledged that "the parties and
their counsel have throughly reviewed" the agreement and, "where necessary, modified
it to conform to the requirements of their agreement." The agreement was filed with the
trial court. 

 On March 7, 2008, Janet filed a motion for continuance and request for the court to
order the parties back to mediation or to submit a revised agreement. In her motion, Janet
asserted that she had been fraudulently induced into signing the MSA; Janet contended
that her accountant had been unprepared to assist her at the time of the mediation and
that certain properties were incorrectly categorized in the agreement as Roland's separate
property. Roland then filed a motion for entry of judgment on March 10, 2008, asking the
court to enforce the MSA.

 The trial court held a hearing on the parties' motions on March 13, 2008. Roland
testified that the parties came to an agreement after a day-long mediation. He stated that
both parties were represented by attorneys and accountants. Roland generally agreed that
the negotiation had involved a process of "give and take" and that, although not completely
satisfied with the result, he signed the agreement at the end of the day. Janet testified that
she experienced some confusion during the negotiation regarding the identity of certain
land. However, Janet confirmed in her testimony that "[she] could tell which pieces of
property" were which. Janet further testified that she was dissatisfied with the performance
of her accountant and blamed him for her inability to recognize certain properties. 

 At the conclusion of that hearing, the trial court ordered the parties to submit briefing
regarding why the MSA should or should not be entered as the final judgment. Evidence
attached to Janet's briefing included her affidavit, in which Janet explained her rationale
for claiming that Roland had committed fraud. Janet explained that she and Roland had
two pieces of property in Woodbury County, Iowa. One of those properties was the
separate property of Roland; the couple referred to this property as the "Woodbury" tract. 
The other was the separate property of Janet; the couple referred to this property as the
"Peterson" tract. In her affidavit, Janet contended that Roland misled her by labeling the
"Peterson" tract as "Rock Township, Woodbury" in the MSA. Janet also averred that, in
the MSA, Roland had listed certain community corporate assets as his separate property,
and because of this misplacement, she was not alerted as to this erroneous categorization. 
 On March 24, 2008, the court entered a final decree of divorce mirroring the terms
of the MSA. (1) Janet filed a motion for new trial on April 23, 2008, which included another
affidavit that made essentially the same allegations as Janet's prior affidavit. She asked
the court for a new trial on her claim for recision or reformation of the MSA based on fraud,
mistake, or improper conversion of separate property. A hearing was held, and the court
denied her motion on June 3, 2008. This appeal ensued.II. DISCUSSION

A. Mediated Settlement Agreement

 By three issues, Janet argues that the trial court erred in refusing to rescind the
MSA and denying her motion for new trial. (2) In her second issue, Janet contends that the
agreement should have been rescinded because her signature was procured by Roland's
fraud. In her third and fourth issues, Janet challenges the enforceability of the agreement
on the basis of mutual or unilateral mistake, respectively. She asks this Court to reverse
the judgment of the trial court and remand for a new trial.

 1. Standard of Review and Applicable Law

 We review the trial court's denial of a motion for new trial for abuse of discretion. 
In re R.R., 209 S.W.3d 112, 114 (Tex. 2006); Ricks v. Ricks, 169 S.W.3d 523, 526 (Tex.
App.-Dallas 2005, no pet.). A court abuses its discretion if it acts arbitrarily or
unreasonably or without reference to guiding rules and principles. Ricks, 169 S.W.3d at
526; see also Olvera v. Olvera, No. 01-07-00231-CV, 2008 WL 598305, at *4 (Tex.
App.-Houston [1st Dist.] Mar. 6, 2008, no pet.) (mem. op.).

 Under section 6.602 of the family code, an MSA is immediately binding on the
parties if: (1) a prominently displayed (e.g. boldfaced, capital letters, or underlined)
statement provides that the agreement "is not subject to revocation"; (2) the agreement is
signed by the parties; and (3) the agreement is signed by the parties' attorneys who are
present at the time of signing. Tex. Fam. Code. Ann. § 6.602(b); see Cayan v. Cayan, 38
S.W.3d 161, 165 (Tex. App.-Houston [14th Dist.] 2000, pet. denied) (holding that section
6.602 creates an option for divorcing parties whereby their agreement is binding at the time
of execution rather than at the time final judgment is rendered). "If a mediated settlement
agreement meets [those] requirements[,] . . . a party is entitled to judgment on the
mediated settlement agreement notwithstanding Rule 11 . . . or another rule of law." Tex.
Fam. Code. Ann. § 6.602(c); see also Herszage v. Herszage, No. 13-06-00257-CV, 2007
WL 2323979, at *4-5 (Tex. App.-Corpus Christi Aug. 16, 2007, no pet.) (mem. op.). An
agreement that meets the requirements of section 6.602 is "more binding than a basic
written contract." In re Joyner, 196 S.W.3d 883, 889 (Tex. App.-Texarkana 2006, pet.
denied). However, a trial court need not enforce an MSA "if it is illegal in nature or was
procured by fraud, duress, coercion, or other dishonest means." Id. at 890.

 2. Fraud

 Janet claims that Roland fraudulently induced her into signing their MSA by
misrepresenting the nature of certain pieces of property listed on the inventory attached
to their agreement. A fraudulent inducement claim requires evidence that: (1) Roland
made a material misrepresentation that was false; (2) Roland knew the misrepresentation
was false or asserted it without knowledge of its truth; (3) Roland knew Janet intended to
act upon the misrepresentation; (4) the misrepresentation was, in fact, relied upon; and (5)
such reliance caused Janet injury. See In re FirstMerit Bank, 52 S.W.3d 749, 758 (Tex.
2001); see also Olvera, 2008 WL 598305, at *4 (addressing fraudulent inducement in the
context of a section 6.602 MSA).

 Janet asserted in her affidavits that Roland intentionally misled her by
mischaracterizing certain property in the MSA. However, Janet's speculations in her
affidavits as to Roland's intentions do not prove he made a material misrepresentation that
he knew was false. See Ricks, S.W.3d at 527 (concluding that wife's bare assertions that
the market value of certain marital property was incorrectly recorded in the MSA did not
prove that husband misrepresented the true value of the property). In fact, Janet testified
at the March 13, 2008 hearing that she was able to identify the properties and that she
blamed her accountant for any confusion she experienced regarding the identity of the
properties. We conclude that Janet presented no evidence that Roland misrepresented
the nature of the properties in the MSA with the intention that Janet act on it to her
detriment. 

 Regardless, by pursuing a section 6.602 agreement, Janet and Roland were
removing their divorce from traditional settlement procedures. See In re Joyner, 196
S.W.3d at 889 ("[T]he purpose of mediation [under section 6.602] is to let parties settle
their property as they see fit, keeping those matters out of the courtroom."); Cayan, 38
S.W.3d at 166 (reasoning that the Legislature created a "procedural shortcut" by enacting
section 6.602). The trial court was entitled to enforce Janet and Roland's MSA without
regard to whether "the terms of the agreement [were] just and right." Cayan, 38 S.W.3d
at 166. When presented with a valid, binding MSA, a court cannot substitute its own
judgment for that of the parties and modify the agreement. See In re Joyner, 196 S.W.3d
at 890-91. Here, the court had before it an agreement signed by both parties and their
attorneys that contained clear and conspicuous language stating the agreement was
irrevocable. By signing the agreement, Janet and Roland affirmed that they and their
counsel had thoroughly reviewed the contents and agreed that all of their claims were
settled by the agreement. We will not reward Janet with "a reprieve from the agreement"
merely because she failed to exercise due diligence in reviewing the terms and conditions
before signing her name to the MSA. Cayan, 38 S.W.3d at 167; see also Herszage, 2007
WL 2323979, at *6 (holding that parties to an MSA must protect themselves by reviewing
the agreement before signing and refusing to revoke an MSA merely because the wife
failed to adequately inspect the terms). Because Janet and Roland's agreement met all
the requirements for a binding MSA and because Janet did not prove that Roland
fraudulently induced her assent to the agreement, the trial court did not abuse discretion
in enforcing the MSA. See Tex. Fam. Code Ann. § 6.602(b); In re Joyner, 196 S.W.3d at
889. Accordingly, Janet's second issue is overruled. (3)

 3. Mistake

 In her third and fourth issues, Janet argues that the trial court erred in enforcing the
MSA because it was the result of mutual or unilateral mistake. However, Janet provides
us with no authority, and we find none binding on this Court, applying the contract doctrine
of mistake to section 6.602 agreements. Janet and Roland's agreement under section
6.602 was "more binding than a basic written contract." In re Joyner, 196 S.W.3d at 889. 
Absent fraud, see Cayan, 38 S.W.3d at 167, "nothing either party could have done would
have modified or voided the [MSA] once everyone had signed it." In re Joyner, 196
S.W.3d at 889. Therefore, we conclude that the trial court did not abuse its discretion in
denying Janet's motion for new trial on the basis of mistake in the MSA. Janet's third and
fourth issues are overruled.


B. Jurisdiction

 By her fifth issue, Janet argues that the trial court lacked subject-matter jurisdiction
to divide the couple's out-of-state real property. In her sixth issue, Janet contends that the
court lacked jurisdiction to divide the couple's corporate assets--that the court was only
permitted to divide shares of stock.

 1. Standard of Review

 Whether a court has subject-matter jurisdiction is a question of law and is subject
to de novo review. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.
2004). 

 2. Out-of-State Property; Corporate Assets

 Citing Miller v. Miller, Janet argues that Texas trial courts are not vested with
jurisdiction to adjudicate title to land in another state. 715 S.W.2d 786, 788 (Tex.
App.-Austin 1986, writ ref'd n.r.e). However, the court here engaged in no such
adjudication. The trial court merely enforced an agreement between the parties that was
immediately binding when executed. See Cayan, 38 S.W.3d at 165; In re Joyner, 196
S.W.3d at 890-91 (holding that a trial court is without discretion to modify a valid, binding
MSA). Moreover, even in the absence of a section 6.602 MSA, Texas courts have
jurisdiction under the family code to award property in a divorce wherever that property is
situated. See Tex. Fam. Code Ann. § 7.002(b) (Vernon 2006) (emphasis added). As such,
the trial court did not err in enforcing Janet and Roland's MSA that divided certain out-of-state property.

 With regard to her sixth issue, Janet claims that, because a corporation is an entity
in itself separate from its shareholders, the assets of a corporation do not belong to the
spouses who own the corporation as community property. Generally citing McKnight v.
McKnight, Janet argues that this separate legal identity prevents a trial court from dividing
corporate assets and that, rather, a court is only permitted to divide the spouses' shares
of stock. 543 S.W.2d 863 (Tex. 1976). Nevertheless, Janet points us to no law creating
an exception to the immediately binding nature of a valid section 6.602 MSA for corporate
assets. See Cayan, 38 S.W.3d at 165. The family code provides that a party to a properly
executed MSA is entitled to judgment on the agreement notwithstanding any other rule of
law. See Tex. Fam. Code Ann. § 6.602(c). Here, Janet and Roland entered into a binding
MSA; Roland was entitled to enforce that agreement, and the trial court did not err in doing
so. See id.; see also Herszage, 2007 WL 2323979, at *5-6 (enforcing an MSA where the
evidence showed that the parties knowingly entered into an irrevocable agreement).

 It is important to note that Janet provided this Court with no authority, and, again,
we find none, addressing these jurisdictional issues in the context of a section 6.602 MSA. 
Without more, we are not persuaded that the trial court was without jurisdiction to enforce
the binding, irrevocable agreement between Janet and Roland. We overrule Janet's fifth
and sixth issues.

III. CONCLUSION

 The judgment of the trial court is affirmed.


 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and

filed this 28th day of August, 2009.
1. The court entered findings of fact and conclusions of law. Janet does not challenge the trial court's
findings and conclusions on appeal. However, because we have a complete record before us, the trial court's
findings are not conclusive. See J & J Marine, Inc. v. Le, 982 S.W.2d 918, 924 (Tex. App.-Corpus Christi
1998, no pet.). 
2. We address Janet's second, third, and fourth issues before her first issue because our decision on
those issues will guide our decision on the first. See Tex. R. App. P. 47.1.
3. In her first issue, Janet claims that the agreement violated family code section 7.002 by awarding
Janet's separate property to Roland. See Tex. Fam. Code Ann. § 7.002(b)(1) (Vernon 2006). However,
because we have determined that the MSA was not invalidated by fraud, the trial court here did not err in
enforcing the terms of Janet and Roland's irrevocable MSA. A court cannot modify the terms of a valid,
binding MSA and is not required to assure that the division of property in the MSA is just and right. See In re
Joyner, 196 S.W.3d 883, 889, 890-91 (Tex. App.-Texarkana 2006, pet. denied). Therefore, we also overrule
Janet's first issue because the court appropriately divided the property according to the terms of the MSA.