**AFFIRMED and Opinion Filed August 15, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00577-CV**

**IN THE INTEREST OF I.P., A CHILD**

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-19-00991**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Garcia, and Kennedy
Opinion by Justice Garcia

This is a divorce case. Appellant Margarita Padilla challenges the property division ordered by the trial judge after a bench trial. We affirm.

### I. BACKGROUND

**A. Facts**

Appellant Margarita Padilla and appellee J. Isaias Padilla were married in 1994.

Isaias sued for divorce in January 2019, and Margarita filed a counterpetition for divorce. Both parties pleaded that the marriage had become insupportable. Margarita also pleaded that Isaias had committed adultery.

On October 14, 2021, the case was tried without a jury. The parties had one minor child, I.P., but child-custody issues were not greatly disputed. Rather, the trial's focus was the property division.

Evidence suggested that the community estate's most significant assets were the following:

- a business called Rock N Roll Stone Supply that Margarita operated;

- an interest in a pool-installation business called Rooster Tile that Isaias operated;

- a house that Margarita lived in;

- a house that Isaias lived in;

- other real property consisting of

  + two rental properties in Irving;

  + a house in Mexico;

  + a lot on or near Stemmons Freeway; and

  + an interest in two lots in Dallas where Rooster Tile had its place of business;

- several vehicles, including some that Isaias used to carry on Rooster Tile's business; and

- several bank accounts and a certificate of deposit.

Regarding Rooster Tile, Isaias testified that his brother Juan owned a 50% interest in that company and the community estate owned the other 50%. Other evidence indicated that Isaias and Juan jointly owned the two lots on which Rooster Tile's place of business was situated.

The valuation of the two family businesses was an important issue at trial. Isaias called an expert witness who testified that "Mr. Padilla's 50-percent interest" in Rooster Tile was worth $236,000. Isaias's inventory and appraisement was admitted into evidence, and in that document Isaias stated that the community's 50% interest in Rooster Tile was worth $386,233 as of August 31, 2020 (over a year before trial). The same inventory and appraisement listed the value of Rock N Roll as $700,000 as of August 31, 2020, but Margarita testified that Rock N Roll's value was not $700,000. No other evidence of Rock N Roll's market value was admitted at trial, although federal tax returns were admitted showing that Rock N Roll had "Ordinary business income" of $64,529 in 2019 and $17,959 in 2020.

There were discrepancies in the evidence about the parties' bank accounts. The evidence consisted principally of some bank statements, a list of accounts and values prepared by Margarita, and a similar list appearing in Isaias's inventory and appraisement. Notably, most of Isaias's information about the accounts was over two years old, while Margarita's list of accounts was undated. We summarize the evidence as follows:

| Account | Margarita's list | Isaias's inventory |
| --- | --- | --- |
| Bank of America 6223 | $84,400 | $76,849.33 (as of Oct. 13, 2021) |
| Bank of America 2328 | $3,430.02 | $66,138.98 (as of Dec. 17, 2018) |
| Bank of America 1488 | $4,763.64 | $27,855.08 (as of Mar. 15, 2019) |
| Bank of America 2270 | $23,021.13 | $23, 020.26 (as of Dec. 18, 2018) |

| | | |
|---|---|---|
| Chase Bank 6249 | not listed | $377,536.71 (as of Dec. 31, 2018) |
| Chase Bank 1729 | $281,226.80 | not listed |
| Chase Bank 2760 | $5,058.46 | not listed |
| Bank of America 6339 | $14,015.01 | not listed |
| | | |
| **Totals** | **$416,995.06** | **$571,400.36** |

Finally, Isaias testified that he began an adulterous relationship during the marriage and that he fathered three children in that relationship. The trial judge made a fact finding that Isaias committed adultery.

## B. Posttrial Proceedings

On October 26, 2021, the trial judge issued an unsigned memorandum ruling rendering judgment that the divorce was granted and stating how the community estate would be divided. For present purposes, the significant rulings were as follows:

- Isaias received 100% of the community interest in Rooster Tile;

- Margarita received 100% of Rock N Roll and the Stemmons property;

- Isaias and Margarita each received 50% of a Chase account ending in 6249; and

- Margarita received 100% of a Chase savings account ending in 1729.

A month later, the trial judge issued an amended memorandum ruling that made the following changes:

- the Stemmons property would be sold and the proceeds equally split between Isaias and Margarita unless Margarita bought Isaias out for $200,000 by January 30, 2022;

–4–

- Isaias, rather than Margarita, received 100% of the Chase savings account ending in 1729.

On March 9, 2022, the trial judge held a hearing about the form of the final decree. During the hearing, the judge indicated that she had changed the original allocation of the Chase 1729 account because she reviewed the evidence and saw the discrepancy about the Chase accounts and amounts. She also indicated that she did not make a finding about waste and was not trying to reimburse Isaias for anything; rather, she was attempting to make a just and right division.

On March 13, 2022, the trial judge signed the final decree of divorce. The property division essentially tracked the amended memorandum ruling and made the following awards:

| Property Awarded To Isaias | Property Awarded To Margarita |
| --- | --- |
| • 100% of Rooster Tile and the real estate it occupied<br>• The house he lived in, the house in Mexico, and one of the community's two rental properties<br>• 100% of Bank of America account 6223 ($76,849.33)<br>• 100% of Chase account 1729 ($281,214.56)<br>• 50% of Bank of America accounts 2328, 1488, and 2270 (Isaias's share totaling $46,960) | • 100% of Rock N Roll<br>• The house she lived in and the other of the community's two rental properties<br>• 100% of Chase account 2760 ($5,058.46)<br>• 50% of Bank of America accounts 2328, 1488, and 2270 (Margarita's share totaling $46,960) |

The decree further ordered that Margarita would receive the Stemmons property if she paid Isaias $200,000 by June 1, 2022; otherwise the property would be sold for

at least $425,000 and the net proceeds would be divided equally between Margarita and Isaias.

Margarita timely filed a motion to modify, correct, or reform the judgment. The trial judge held a hearing, at which Margarita argued that the property division actually gave her less than half of the value of the community estate. The judge disagreed and said that she thought the division resulted in a difference of about $83,000 in Margarita's favor. The judge denied the motion to modify by written order.

On Margarita's request, the judge later signed findings of fact and conclusions of law. In the findings, the judge reiterated the property division ordered in the divorce decree. She did not find the value of Rooster Tile, Rock N Roll, or any of the community real estate. In finding 39, she stated the factors that she considered in determining a just and right division of the community estate as follows:

a. the adultery on the part of [Isaias] during the marriage;

b. the granting of conservatorship of [I.P.] to [Margarita];

c. future needs of the child;

d. the community indebtedness and liabilities for which [Isaias and Margarita] will be responsible;

e. the tax consequences of the division of the property;

f. the future earning power, business opportunities, capacities, and abilities of the spouses[;]

g. the money in the possession of [Margarita] at the time of separation and the amount of money depleted from the bank

account under her control of [sic] the Chase Bank Account number ending 1729.

Margarita timely filed a notice of appeal.

## II.    Issues on Appeal

Margarita raises four issues on appeal, which we paraphrase as follows:

1.    The record contains no evidence to support the valuation of the community's interest in Rooster Tile because Isaias's expert's testimony on that subject was conclusory and speculative.

2.    The record contains no evidence to support the valuation of the community's interest in Rock N Roll.

3.    Given the lack of evidence about the value of the businesses, the trial judge abused her discretion by dividing the community estate.

4.    There is legally and factually insufficient evidence to support finding of fact 39(g), and that erroneous finding materially affected the property division.

## III.    Analysis

### A.    Issues Two and Three: Did the trial judge err by dividing the community estate because there was no evidence to show the value of Rock N Roll?

We choose to address Margarita's second issue first. Her second issue necessarily refers to her third issue, which is essentially a harmful-error argument in support of both issue one and issue two.

#### 1.    Applicable Law and Standard of Review

Upon granting a divorce, the trial judge must order a division of the parties' estate in a just and right manner having due regard for the rights of the parties and any children of the marriage. TEX. FAM. CODE ANN. § 7.001. The trial judge need

not divide the community property equally. *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981). In dividing the estate, the judge may consider factors such as

- the parties' capacities and abilities,

- the benefits that the party not at fault would have derived from the marriage's continuation,

- the parties' business opportunities and education,

- the parties' health and ages,

- the parties' relative financial conditions and obligations,

- the size of the separate estates, and

- the nature of the property.

*See id*. at 699. The court may also consider a spouse's dissipation of the community estate when making a just and right division. *Slicker v. Slicker*, 464 S.W.3d 850, 862 (Tex. App.—Dallas 2015, no pet.).

In a divorce proceeding, community property should generally be treated according to its market value. *See Ricks v. Ricks*, 169 S.W.3d 523, 527 (Tex. App.—Dallas 2005, no pet.).

The trial judge has wide discretion in dividing the community estate, and we reverse only if the trial judge abused her discretion. *See Murff*, 615 S.W.2d at 698.

### 2. Error Preservation

Margarita argues that the only evidence of Rock N Roll's value admitted at trial was conclusory and, thus, nonprobative. Therefore, she concludes, the trial judge abused her discretion by dividing the community estate without any evidence

of the value of a significant community asset. Isaias makes several responses, one of which is that Margarita forfeited this argument by failing to present any probative evidence of Rock N Roll's value herself. We conclude that Isaias is correct.

"[W]hen a party does not provide values for property to be divided, that party may not complain on appeal that the trial court lacked sufficient information to properly divide the property." *Deltuva v. Deltuva*, 113 S.W.3d 882, 887 (Tex. App.—Dallas 2003, no pet.); *accord In re M.H.A.*, No. 05-20-00787-CV, 2022 WL 2527003, at *5 (Tex. App.—Dallas July 7, 2022, no pet.) (mem. op.); *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 385, 389, 391 (Tex. App.—Dallas 2013, no pet.); *Talliti v. Sarris*, No. 05-10-00096-CV, 2011 WL 2859996, at *6 (Tex. App.—Dallas July 20, 2011, no pet.) (mem. op.). In this case, Margarita did not introduce any evidence of Rock N Roll's value, so she cannot complain on appeal that the trial judge lacked sufficient information to divide the estate in a just and right manner. *See Deltuva*, 113 S.W.3d at 887.

Margarita cites authority for the premise that the parties' failure to introduce evidence of the value of significant community assets does not absolve the trial judge of the duty to make a just and right division of the community estate. *See Odom v. Odom*, No. 12-06-00218-CV, 2007 WL 677800, at *2 (Tex. App.—Tyler Mar. 7, 2007, no pet.) (mem. op.); *see also Mathis v. Mathis*, No. 01-17-00449-CV, 2018 WL 6613864, at *3 (Tex. App.—Houston [1st Dist.] Dec. 18, 2018, no pet.) (mem. op.). *Odom* expressly states that the *Deltuva* waiver rule is appropriate only if (1) the

record contains some evidence of the value of the contested item or estate or (2) the unvalued items would obviously have little effect on the overall property division. 2007 WL 677800, at *2; *see also Mathis*, 2018 WL 6613864, at *3 (stating rules similar to those stated in *Odom*). But *Deltuva* and its progeny do not recognize these exceptions to the waiver rule, and we are bound to follow our own precedents. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022). Accordingly, we must reject *Odom* and *Mathis* to the extent they are contrary to *Deltuva*.

Margarita also cites *Finn v. Finn*, 658 S.W.2d 735, 746–47 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) (en banc), for the premise that a trial judge cannot properly exercise its discretion in dividing the estate without a proper valuation of the community's assets. But in *Finn*, the appealing spouse actually introduced some evidence regarding the value of the community asset in question—her husband's partnership interest in a law firm—and the question before us was whether the trial judge had committed harmful error by denying the wife's requests for discovery regarding the value of the partnership interest. *Id*. at 742–47. Thus, *Finn* is distinguishable from cases like *Deltuva* in which the appealing spouse failed to introduce any valuation evidence regarding a community asset.

Finally, we recognize that a different rule governs when a divorce and property division are rendered by default. In that circumstance, we will reverse the property division if it is not supported by evidence of the value of the community estate. *See, e.g., Heap-Welch v. Welch*, No. 05-19-01260-CV, 2020 WL 6304992, at

*2–3 (Tex. App.—Dallas Oct. 28, 2020, no pet.) (mem. op.); *Gonzalez v. Gonzalez*, 331 S.W.3d 864, 868–69 (Tex. App.—Dallas 2011, no pet.); *In re E.M.V.*, 312 S.W.3d 288, 291 (Tex. App.—Dallas 2010, no pet.); *accord Sandone v. Miller-Sandone*, 116 S.W.3d 204, 205 (Tex. App.—El Paso 2003, no pet.); *O'Neal v. O'Neal*, 69 S.W.3d 347, 348 (Tex. App.—Eastland 2002, no pet.). But because these cases involve default judgments, they are distinguishable from *Deltuva* and similar cases in which the appealing spouse appeared at trial but nevertheless introduced no valuation evidence regarding a community asset.

Because Margarita introduced no evidence of the value of Rock N Roll, she cannot now complain that the trial judge lacked sufficient information to make a just and right division of the community property.

### 3. Conclusion

We overrule issue two and the related part of issue three.

**B.    Issues One and Three: Did the trial judge err by dividing the community estate because the evidence of Rooster Tile's value was conclusory and speculative?**

In issues one and three, Margarita argues that the trial judge erred by dividing the community estate because no probative evidence of Rooster Tile's value was admitted at trial. Specifically, she argues that the expert testimony adduced by Isaias regarding Rooster Tile's value constituted no evidence because the testimony was conclusory and speculative.

Our analysis of issue two above also applies to issue one. Margarita argues that the trial judge could not properly divide the community estate because no probative evidence of Rooster Tile's value was admitted at trial. But Margarita herself offered no evidence of Rooster Tile's value at trial. Accordingly, even if Margarita is correct and no probative evidence of Rooster Tile's value was admitted at trial, Margarita cannot argue on appeal that this lack of evidence rendered the property division an abuse of discretion. *See, e.g.*, *Deltuva*, 113 S.W.3d at 887.

We overrule issue one and the related part of issue three.

## C.  Issue Four: Is finding of fact 39(g) supported by legally or factually insufficient evidence, thereby making the property division an abuse of discretion?

In finding of fact 39, the trial judge listed the factors that she considered in determining a just and right division of the community estate. In her fourth issue, Margarita argues that there was legally or factually insufficient evidence to support one factor listed in finding 39(g) and that this erroneous finding affected the property division. *See In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d at 383 (insufficiency of the evidence is a relevant factor in determining whether the trial judge abused her discretion). Isaias responds that the evidence was sufficient to support finding 39(g). We conclude that Margarita has not shown that the property division was an abuse of discretion.

As noted above, the trial judge's finding of fact 39 stated the factors that she considered in determining a just and right division of the community estate:

a.      the adultery on the part of [Isaias] during the marriage;

b.      the granting of conservatorship of [I.P.] to [Margarita];

c.      future needs of the child;

d.      the community indebtedness and liabilities for which [Isaias and Margarita] will be responsible;

e.      the tax consequences of the division of the property;

f.      the future earning power, business opportunities, capacities, and abilities of the spouses[;]

g.      the money in the possession of [Margarita] at the time of separation and the amount of money depleted from the bank account under her control of [sic] the Chase Bank Account number ending 1729.

Margarita attacks only the second half of finding 39(g), arguing that there is no evidence that she depleted the Chase account ending in 1729. (Although that part of the finding does not expressly state that Margarita caused the depletion, the reference to the bank account's being under Margarita's control implies that she did.) But even assuming that Margarita is correct about the insufficiency of the evidence, we conclude that she has not shown reversible error.

To obtain reversal, Margarita must show not only that the trial judge erred by making finding 39(g) but also that the error was harmful, i.e., caused the property division to be an abuse of discretion. *See* TEX. R. APP. P. 44.1(a)(1); *Wheeling v. Wheeling*, 546 S.W.3d 216, 224 (Tex. App.—El Paso 2017, no pet.). But the trial judge did not find the amount of the money that was taken from the 1729 account so as to constitute "depletion." Without such a finding, Margarita cannot show that the

error, if any, had more than a de minimis effect on the trial judge's just and right division of the community estate. *See Rice v. Rice*, No. 02-21-00413-CV, 2023 WL 109817, at *9 (Tex. App.—Fort Worth Jan. 5, 2023, no pet.) (mem. op.) ("[E]rrors that have a *de minimis* effect on the division, such as in the range of two to three percent, do not require reversal and remand.").

The *Wheeling* case is closely on point. In that divorce case, the trial court found that both spouses committed waste and that each spouse's wasteful conduct offset the other spouse's waste. 546 S.W.3d at 222. On appeal, the wife argued that there was insufficient evidence that she committed waste. *Id*. at 224–25. The court of appeals disagreed, but it went on to hold that in any event the wife had failed to show harm because there was no finding of the value of the waste the parties committed. *Id*. at 227. Because the trial court did not find the value of the waste, there was no way to compare the waste to the entire community-property estate, and thus the wife could not "show that this error [i.e., the finding that she committed waste], if any, had more than a de minimis effect on the just and right division of the community estate." *Id*. "In other words, even if we determined that Wife was correct in her assertion that the trial court erred in finding that she committed waste she nonetheless failed to establish that such an error probably caused the rendition of an improper judgment." *Id*. The same reasoning applies to this case: because the trial judge did not find the amount by which Margarita depleted the 1729 bank account, we cannot tell whether the depletion finding, even if erroneous, had more than a de

minimis effect on the property division. Accordingly, Margarita has not shown that the depletion finding was harmful even if it was erroneous. *See* TEX. R. APP. P. 44.1(a)(1).

We overrule Margarita's fourth issue.

## IV. DISPOSITION

We affirm the final decree of divorce.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

220577F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

IN THE INTEREST OF I.P., A
CHILD

No. 05-22-00577-CV

On Appeal from the 301st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-19-00991.
Opinion delivered by Justice Garcia.
Justices Pedersen, III and Kennedy
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee J. Isaias Padilla recover his costs of this appeal from appellant Margarita Padilla.

Judgment entered this 15th day of August 2023.