

# NUMBER 13-08-00536-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RAUL LOZANO,                                                                   **Appellant,**

**v.**

MARTHA LOZANO,                                                                **Appellee.**

## On appeal from the County Court at Law
## No. 5 of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Garza

This is an appeal from a denial of a motion for new trial in a divorce proceeding. By four issues, appellant, Raul Lozano, contends that the trial court abused its discretion in denying his motion for new trial because: (1) the division of the community estate was not done in an equitable and just manner; (2) the calculation of child support and retroactive child support was based on insufficient evidence and not done in accordance with the child support guidelines contained in the family code, *see* TEX. FAM. CODE ANN. §§ 154.001-.309 (Vernon 2008 & Supp. 2009); (3) he was improperly denied adequate visitation with the couple's minor child; and (4) the denial of his oral motion for continuance was improper. We affirm.

## I. Factual and Procedural Background

Appellant and appellee, Martha Lozano, were married on January 30, 1993, and had one child together[1]; however, in May 2006, the parties stopped living together. Appellant, a civilian contractor working in Afghanistan for the better part of nine years, filed an original petition for divorce on May 31, 2006. Appellant later filed his first amended petition for divorce on March 12, 2007. Appellee was subsequently served with notice of appellant's first amended petition, and she filed her original answer and original counter-petition for divorce.

On July 20, 2007, appellee filed a "Motion For Docket Control Order," requesting that the trial court set deadlines for discovery-related issues. On the same day, appellee also filed a motion for mediation. The trial court, after a hearing, granted appellee's docket control motion, set the case for trial on January 14, 2008, and set the following deadlines: (1) November 14, 2007 for the submission and completion of all responses to requests for disclosure; and (2) all other discovery was to be completed thirty days prior to the final hearing.

Appellee served appellant with interrogatories and requests for production and disclosure. Appellant made no objections to the discovery requests, and provided no answers or information in response to appellee's requests. On November 5, 2007, appellee filed motions to compel discovery and for sanctions, alleging that appellant had not responded to her discovery requests. The trial court conducted a hearing on appellee's motions at which neither appellant nor his trial counsel appeared. The trial court ordered appellant to respond to appellee's discovery requests by December 10, 2007.[2] The trial court also ordered appellant to pay the expenses of discovery, court costs, and $500 in attorney's fees to appellee as sanctions.

---

[1] The child, R.L., was twelve years old at the time of the final hearing.

[2] The transcript of the hearing on appellee's motions to compel and for sanctions was not filed with this Court.

On November 29, 2007, appellant filed an unverified motion for rehearing, arguing that the trial court's order granting appellee's motions to compel and for sanctions was unwarranted because: (1) appellant's trial counsel, Joe Martinez, went to the wrong court; and (2) appellant had a meritorious defense for failing to attend the hearing and participate in discovery because he was stationed "in Afghanistan supporting U.S. troops."[3] In response to appellant's motion for rehearing, appellee filed a motion for enforcement and contempt and second motions to compel and for sanctions and had the motions set for a hearing on January 14, 2008.

Martinez filed a written motion for continuance on January 9, 2008, and a motion to withdraw as counsel on January 16, 2008. The trial court granted Martinez's motion for continuance and motion to withdraw as counsel. The case was reset, and the trial court ordered appellant to respond to appellee's discovery requests.

Appellee later filed a motion urging the trial court to enter temporary orders regarding child support and the parties' use of community property. A hearing on appellee's motion for temporary orders was set for February 11, 2008. Prior to the hearing, attorney Abel Hinojosa filed an appearance as appellant's counsel.

On February 11, 2008, the trial court conducted the hearing on appellee's motion for temporary orders. At the hearing, Hinojosa stated that appellant was unable to attend because he was still in Afghanistan and orally moved the trial court to continue the hearing and to deny the outstanding sanctions motion. Hinojosa also stated that appellant was a civilian contractor in Afghanistan; appellant was not military personnel; and the reason for appellant's absence at the hearing was that he was in a Jordanian hospital receiving

---

[3] The circumstances of appellant's job and station in Afghanistan was a point of contention in the trial court. Appellant initially contended that he was stationed in Afghanistan as a contractor whose purpose was to support the United States military. Thus, appellant argued that his status was essentially the same as that of United States military personnel, and therefore, he was entitled to the rights and privileges afforded under the Servicemembers Civil Relief Act (the "Act")—namely, protection from having a default judgment entered against him in any civil action or proceeding. See 50 U.S.C. § 521(a) (2008). However, at a hearing on appellee's motion for temporary orders, appellant's counsel admitted that appellant was working in Afghanistan as a civilian. Appellee testified at a later hearing that appellant was not military personnel and, therefore, was not entitled to protection under the Act. Furthermore, appellant has not directed us to, nor are we aware of, any provision in the Act or case law interpreting the Act to protect civilian contractors who are not serving in the military.

3

treatment for an unspecified infirmity. In addition, the parties discussed the nature of appellant's job and compensation. Appellee's counsel represented to the trial court that appellant was paid around $67,000 per year under a contract and that the contract provided for a 10% "completion bonus." She also stated that appellant's income was not taxed because it was earned overseas. Hinojosa disputed the contentions made by appellee's counsel. Hinojosa represented that appellant only makes $67,295 per year, including all bonuses, and that he paid taxes on his earnings, as indicated by a tax return filed with the Internal Revenue Service.[4] Hinojosa then requested that the trial court award at most $840 per month in temporary child support. The trial court subsequently ordered that: (1) appellant pay $1,000 in child support per month to appellee; (2) appellant maintain R.L. under his health insurance; (3) the parties' serve as joint conservators of R.L. with standard visitation rights; (4) appellee maintain exclusive use and possession of the parties' house; and (5) appellant comply with the previous discovery orders. The trial court set the case for final hearing on March 6, 2008.

Hinojosa filed another motion for continuance on February 22, 2008, and on March 5, 2008, he filed a motion to withdraw as counsel for appellant. Each of these motions was set to be heard at the March 6, 2008 hearing; however, the trial court reset the hearing on the pending motions to March 10, 2008.

The trial court conducted a final hearing in this matter on March 10, 2008. At the hearing, Hinojosa appeared and expressed to the trial court that appellant no longer wished for counsel to withdraw and urged yet another oral motion for continuance. Counsel once again expressed that appellant was in Afghanistan and was not able to attend the hearing because his employment contract would be terminated. Appellee objected to appellant's oral motion for continuance; the trial court subsequently denied appellant's motion. Appellee also re-urged her motion to compel and for sanctions.

The trial court denied appellant's unverified motion for rehearing that had been

---

[4] Neither appellant's purported employment contract nor the tax return were admitted into evidence.

4

carried with the case. Appellant's pleadings were stricken, and appellant was, once again, ordered to pay the $500 in sanctions previously imposed.[5] The trial court then heard testimony from appellee.[6] Appellee testified that: (1) the parties have a twelve-year-old child; (2) the parties' house is in her name; (3) appellant has a retirement account with an unknown balance; (4) she has a retirement account worth approximately $90,000; (5) appellant sent her $1,500 per month for several months for the house payment and to support R.L.; and (6) appellant told her that he made around "100-and-so-[thousand] a year." Appellee requested that appellant be required to maintain the child on his health insurance policy, she be paid retroactive child support, appellant not be granted visitation with the child outside the country, and she be granted the parties' house. Appellee also provided the trial court with a list of items that were appellant's separate property. After hearing appellee's testimony, the trial court granted the divorce and all relief requested by appellee.

On May 23, 2008, appellant filed a motion for new trial, alleging that the trial court: (1) did not divide the community property in a fair and just manner; (2) failed to properly calculate child support and retroactive child support; and (3) failed to award him proper visitation with the parties' child. The trial court set the hearing on appellant's motion for new trial for June 25, 2008.

However, prior to the June 25, 2008 hearing, appellee filed an "Emergency Motion for Clarification of Prior Order for Possession or Access." At the hearing on this motion on May 29, 2008, appellee argued that appellant should not be granted "overnight" supervision with the parties' child because: (1) R.L. does not have a bond with appellant; (2) R.L. has stated that he does not wish to spend the night with appellant; and (3) appellant does not intend to reside in the United States. After speaking with R.L., the trial

---

[5] Appellant does not complain about the trial court's imposition of sanctions for discovery abuse in this appeal.

[6] Appellant did not put forth evidence at the March 10, 2008 final hearing. The only evidence contained in the record is appellee's testimony at the March 10, 2008 final hearing.

5

court took the matter under advisement.[7]

At the hearing on appellant's motion for new trial, Hinojosa explained appellant's absence from the March 10, 2008 final hearing. Appellee's counsel recounted the procedural history of this case and noted appellant's repeated failure to produce responses to discovery propounded to him. Appellee's counsel also requested that the trial court order appellant to pay his child support obligations and the previously granted attorney's fee award. The trial court denied appellant's motion for new trial on August 4, 2008. No requests for findings of fact or conclusions of law were made by either party. This appeal followed.

## II. STANDARD OF REVIEW

We review the trial court's denial of a motion for new trial for an abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006); *see Ricks v. Ricks*, 169 S.W.3d 523, 526 (Tex. App.–Dallas 2005, no pet.). A court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules and principles. *See Ricks*, 169 S.W.3d at 526; *see also Loehr v. Loehr*, No. 13-08-00380-CV, 2009 Tex. App. LEXIS 6863, at *6 (Tex. App.–Corpus Christi Aug. 28, 2009, no pet.) (mem. op.).

A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *Garza v. Garza*, 217 S.W.3d 538, 549 (Tex. App.–San Antonio 2006, no pet.). In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency of the evidence standards of review, and therefore, legal and factual sufficiency are not independent grounds of reversible error. *Id.* Instead, legal and factual sufficiency are factors relevant to our assessment of whether the trial court abused its discretion. *Id.*; *see Zorilla v. Wahid*, 83

---

[7] The record does not contain an order or an oral ruling granting or denying appellee's emergency motion. Instead, the trial court noted the following:

Well, but Counsel, again I don't think that [the] clause on Page 13 of the decree has been met satisfactorily. I don't know that he's entitled to overnight visitation without showing some kind of proof [of residency in the United States], so I—you know, based on what's been ordered by the Court, I don't know that he's entitled to overnight yet.

S.W.3d 247, 252 n.1 (Tex. App.–Corpus Christi 2002, no pet.) (holding that the normal sufficiency standard of the evidence review is part of the abuse of discretion review and not an independent ground for reversal and declining to follow the minority rule—"(1) did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion"—in analyzing abuse of discretion).

Moreover, because no findings of fact or conclusions of law were requested, we must affirm the judgment of the trial court on any legal theory that is supported by the evidence. *See EZ Pawn Corp. v. Gonzalez*, 921 S.W.2d 320, 322 (Tex. App.–Corpus Christi 1996, writ denied); *see also Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) (holding that, in the absence of findings of fact and conclusions of law, the trial court is presumed to have found the necessary facts in support of its judgment if there is any probative evidence to support such findings).

### III. THE TRIAL COURT'S DIVISION OF THE COMMUNITY ESTATE

By his first issue, appellant contends that the trial court's division of the community estate was unjust and unfair because it relied upon appellee's testimony at the March 10, 2008 hearing, which was "[c]onfusing, [u]nreasonable[,] and [i]ts [c]redibility was [q]uestionable." Appellee argues that the trial court's division of the community estate was equitable and her testimony was clear, uncontradicted, and unequivocal, and therefore, the trial court did not abuse its discretion.

#### A. The Division of the Community Estate

The Texas Family Code requires the trial court to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party . . . ." TEX. FAM. CODE ANN. § 7.001 (Vernon 2006). We review the trial court's division of the property in a divorce decree under an abuse of discretion standard. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). "Mathematical precision in dividing property on divorce is usually not possible." *Id.* at 700. Wide latitude and discretion rests with the trial court, and it "is empowered to use its legal knowledge and its human

7

understanding and experience." *Id.*; *see Vallone v. Vallone*, 644 S.W.2d 455, 460 (Tex. 1982). We will reverse on appeal only if the property division is so disproportionate as to be manifestly unjust and unfair. *Barnard v. Barnard*, 133 S.W.3d 782, 787 (Tex. App.–Fort Worth 2004, pet. denied); *Smith v. Smith*, 22 S.W.3d 140, 143 (Tex. App.–Houston [14th Dist.] 2000, no pet.). A trial court is presumed to have properly exercised its discretion in dividing the assets of a marriage. *Murff*, 615 S.W.2d at 699; *see Saldana v. Saldana*, 791 S.W.2d 316, 319 (Tex. App.–Corpus Christi 1990, no writ).

Community property does not need to be divided equally, but the division must be equitable. *See Kimsey v. Kimsey*, 965 S.W.2d 690, 704 (Tex. App.–El Paso 1998, pet. denied). In determining whether the division of the community estate is equitable, the trial court may consider the following non-exclusive factors: (1) the spouses's capacities and abilities; (2) benefits that the party not at fault would have derived from the continuation of the marriage; (3) business opportunities; (4) education; (5) physical conditions of the parties; (6) the relative financial conditions and obligations of the parties; (7) size of the separate estates; (8) the nature of the property; (9) disparities in earning capacities and income; (10) the fault of the breakup of the marriage; and (11) any wasting of the community assets by one of the spouses. *Murff*, 615 S.W.2d at 698-99; *see Garcia v. Garcia*, 170 S.W.3d 644, 653 (Tex. App.–El Paso 2005, no pet.); *see also Combe-Ovadia v. Combe-Ovadia*, No. 14-04-01028-CV, 2006 Tex. App. LEXIS 6844, at **5-6 (Tex. App.–Houston [14th Dist.] Aug. 3, 2006, no pet.) (mem. op.) (citing *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998); *Murff*, 615 S.W.2d at 699).

**B. Discussion**

Appellant, relying heavily on the interested witness rule as outlined in *Ragsdale v. Progressive Voters League*, asserts that appellee's testimony was unreasonable and riddled with inconsistencies and, therefore, did no more than raise a fact issue to be determined by the fact finder with respect to the division of the community estate. *See* 801 S.W.2d 880, 882 (Tex. 1990) ("It is the general rule that the testimony of an interested

8

witness, such as a party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the jury.") (citing *McGilliard v. Kuhlmann*, 722 S.W.2d 694 (Tex. 1986); *Cochran v. Wool Growers Cent. Storage Co.*, 140 Tex. 184, 166 S.W.2d 904, 908 (1942)). Appellant, however, failed to note the following exception to the interested witness rule:

> But there is an exception to this rule, which is that where the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law.
>
> . . . .
>
> The exception to [this] interested witness rule . . . is especially true where the opposing party has the means and opportunity of disproving the testimony, if it is not true, and fails to do so . . . . In other words, failure to contradict is another factor to be considered by the court; but it does not necessarily preclude the holding that a fact issue is raised when . . . there are circumstances in evidence tending to discredit or impeach the testimony of the interested witness.

*Id.* (citing *McGilliard*, 722 S.W.2d at 694; *Anchor Cas. Co. v. Bowers*, 393 S.W.2d 168, 169-70 (Tex. 1965); *Cochran*, 166 S.W.2d at 908) (bracket in original).

Here, appellant presented no evidence contradicting appellee's testimony and does not direct us to any evidence in the record contradicting appellee's testimony. On cross-examination, appellant's counsel did reference appellant's employment contract that was purportedly worth $67,295, but this contract was never entered into evidence. In reviewing appellee's testimony from the March 10, 2008 final hearing, we cannot say that appellee's testimony is so unreasonable or inconsistent as to merely raise a fact issue, especially considering that appellant had numerous opportunities to tender evidence that contradicted appellee's testimony and appellant was afforded the opportunity to cross-examine appellee. *See id.* We therefore conclude that the exception to the interested witness rule applies in this case. *See id.* Further, even if the evidence merely raised a fact issue, as appellant suggests, the trial court was empowered to evaluate the weight of the evidence as the fact finder in this case, and we must defer to trial court's resolution of the evidence.

9

*See O'Carolan v. Hopper*, 71 S.W.3d 529, 533 n.4 (Tex. App.–Austin 2002, no pet.) (stating that the fact finder is the sole judge of the weight and credibility of the evidence).

In any event, appellee testified that appellant made $74,000 per year under his employment contract and that he usually received a bonus at the end of every year. Appellee further testified that appellant told her that he made "100-and-so-[thousand] a year," which presumably accounted for appellant's salary under the contract and his yearly bonus, and that appellant's salary was non-taxable because it was earned overseas. Appellee noted that: (1) appellant sent her $1,500 per month for six to eight months, which was supposed to be used to make the house payment and for support of R.L.; (2) she is the primary caregiver for R.L.; and (3) appellant only returns to the United States a couple times a year for a few days. With respect to the items contained in the house, appellee stated that most of the items were gifts to her from appellant but that some of the gifts were items from overseas and that she thought appellant should have them. Appellee further clarified that appellant should have the following items:

> Jewelry; he has some guns; some ammo; he has a collection of Cachina dolls; liquor; and wine bottles; shot glasses; he has decorative plates, which are plates that just, you know, how—that say where they're from.
>
> . . . .
>
> A computer chair; his clothing; rugs; some curtains; his air heads; he's got a lot of just like souvenirs from where he's been; T-shirts; stuff like that; the safe; the crystal wine glasses that he has; and of course a shelf that he made back in—when he was in high school.

Appellee also testified that appellant should be awarded the truck that he was driving and that she should get the house, some chandeliers, a china set, the vehicle that she was driving, and all remaining items the couple owned and were not explicitly referenced by appellee.

On cross-examination, appellee admitted that her testimony that appellant made "100-and-so-[thousand] a year" was based solely on what he had told her when he was applying to extend his employment contract. Appellee denied ever seeing appellant's contract but recalled that she had been told by her counsel that appellant's contract was

10

for $67,295. Appellee denied using the couple's joint bank account once appellant had filed for divorce. Appellee testified that: (1) the couple bought the house in September 2001 for $89,000; (2) the money used to make the house payments was earned by both her and appellant; (3) there is $10,000 in equity in the house; and (4) the monthly house payment is $1,092.

Appellee later testified to the following regarding the house: "The house is under my name. And he was paying for the house because he had told me, I'll pay for the house and you pay everything else, is what I'm doing." Appellee also testified that she has $90,000 in her retirement account from twenty-three years of service as a school teacher and that appellant has a retirement account from which he has repeatedly withdrawn and that has an unknown balance.

Based on appellee's testimony, we conclude that there was sufficient probative evidence from which the trial court could conclude that a disproportionate division of the community estate was just and right, and we cannot say, as appellant suggests, that the record before us demonstrates that the trial court's division of the community estate is manifestly unjust or unfair. *See Murff*, 615 S.W.2d at 698-99; *Barnard*, 133 S.W.3d at 787; *Smith*, 22 S.W.3d at 143; *see also Handley v. Handley*, 122 S.W.3d 904, 907 (Tex. App.–Corpus Christi 2003, no pet.); *O'Carolan*, 71 S.W.3d at 533 n.4. Furthermore, because appellant failed to participate in discovery as ordered by the trial court, we are left with a record that is devoid of evidence contradicting appellee's testimony and overcoming the presumption that the trial court properly exercised its discretion in dividing the assets of a marriage. *See Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *see also Saldana*, 791 S.W.2d at 319. Thus, we overrule appellant's first issue.

## IV. CHILD SUPPORT

In his second issue, appellant asserts that the trial court abused its discretion in calculating child support and retroactive child support. Specifically, appellant argues that the trial court's award of $1,000 per month in child support is not supported by credible

11

evidence.

## A. Applicable Law

A trial court has discretion to establish child support within the parameters set out in the child support guidelines of the Texas Family Code. *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993); *Scott v. Younts*, 926 S.W.2d 415, 419 (Tex. App.–Corpus Christi 1996, writ denied). A trial court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Rodriguez*, 860 S.W.2d at 415; *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Office of the Att'y Gen. v. Buhrle*, 210 S.W.3d 714, 717 (Tex. App.–Corpus Christi 2006, pet. denied); *see In re M.K.R.*, 216 S.W.3d 58, 61 (Tex. App.–Fort Worth 2007, no pet.) (holding that issues regarding the payment of child support, including confirmation of child support arrearage, are reviewed under an abuse of discretion standard). In determining whether the trial court abused its discretion, we view the evidence in the light most favorable to the trial court's action, indulging every presumption in favor of the judgment. *See Zorilla*, 83 S.W.3d at 253; *see also Warren v. Warren*, No. 13-05-00429-CV, 2008 Tex. App. LEXIS 1859, at *5 (Tex. App.–Corpus Christi Mar. 13, 2008, no pet.) (mem. op.). If some probative and substantive evidence supports the trial court's findings, the trial court did not abuse its discretion. *Zorilla*, 83 S.W.3d at 253.

The trial court may order either or both parents to support a child in the manner specified by the order. TEX. FAM. CODE ANN. § 154.001. In other words, each party has a duty to support his or her minor child. *Id.* § 151.001(b); *see Villasenor v. Villasenor*, 911 S.W.2d 411, 419 (Tex. App.–San Antonio 1995, no writ). Under section 154.001, a trial court must order payment of child support "once financial need and ability to pay [are] established." *Orsak v. Orsak*, 642 S.W.2d 566, 567 (Tex. App.–Dallas 1982, no writ) (citing *Grandinetti v. Grandinetti*, 600 S.W.2d 371, 372 (Tex. Civ. App.–Houston [14th Dist.] 1980, no writ)). For purposes of determining child support liability, the trial court shall calculate net resources, including all wage and salary income and other compensation for

12

personal services, interest, dividends and royalty income, self-employment income, net rental income, and all other income actually being received. TEX. FAM. CODE ANN. § 154.062(a), (b). Further, there must be some evidence in the record of a substantive and probative character of net resources in order for this duty to be discharged. *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 236 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

Moreover, in *Garner v. Garner*, the Dallas Court of Appeals noted the following with respect to the calculation of child support:

> Chapter 154 of the Texas Family Code establishes a multiple-step process for determining the amount of child support. The trial court must first determine the parties' gross income, net income, and monthly net resources. *And, each party is required to furnish information sufficient to identify the party's net resources and ability to pay support, such as production of copies of income tax returns, financial statements, and pay stubs.* After determining the amount of net resources, the trial court must decide whether to apply the child support guidelines or whether application of the guidelines would be unjust or inappropriate. Importantly, a parent's child support obligation is not limited to that parent's ability to pay from current earnings; rather it extends to his or her financial ability to pay from any and all available sources.

*See* 200 S.W.3d 303, 306 (Tex. App.–Dallas 2006, no pet.) (emphasis added); *see also Santillan v. Campos*, No. 04-08-00904-CV, 2009 Tex. App. LEXIS 8301, at **8-9 (Tex. App.–San Antonio Oct. 21, 2009, no pet. h.) (mem. op.).

## B. Discussion

Appellant once again argues that appellee's testimony was inconsistent and unreliable and the trial court abused its discretion by relying on her testimony in calculating child support and awarding appellee retroactive child support. Appellant further argues that according to the child support tables promulgated by the Texas Attorney General's Office, his child support obligation should have been only $775.89 per month rather than $1,000 per month.

However, in making his arguments, appellant references evidence not in the record before us, including the purported employment contract, a tax return allegedly filed by appellant showing taxable income of $48,000, and a revised calculation of child support apparently based on the child support tables promulgated by the Texas Attorney General's

13

Office. *See Gonzalez v. Villarreal*, 251 S.W.3d 763, 777 n.17 (Tex. App.–Corpus Christi 2008, pet. dism'd w.o.j.) (holding that the attachment of documents as exhibits or appendices to appellate briefs is not formal inclusion in the record on appeal and therefore, the documents cannot be considered); *see also Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 293 (Tex. App.–Houston [14th Dist.] 2002, no pet.) (same). Furthermore, despite numerous opportunities to do so, appellant failed to provide any evidence to refute the testimony of appellee regarding his income. *See* TEX. FAM. CODE ANN. § 154.063(1) (providing that each party is required to provide the trial court with information sufficient to accurately identify the party's net resources and ability to pay child support); *see also Garner*, 200 S.W.3d at 306. As previously noted, appellee testified that appellant made at least $74,000 per year in income and that he has told her that he made "100-and-so-[thousand] a year" once bonuses and other income sources were accounted for. The trial court, in the final divorce decree, concluded that appellant was responsible for $1,000 in monthly child support and was $7,800 in arrears in paying child support.

As we have already concluded, appellee's testimony was not confusing or inconsistent, and we applied the exception to the interested witness rule. *See Ragsdale*, 801 S.W.2d at 882. Further, as the fact finder, the trial court weighed the evidence, and we must defer to the fact finder's resolution of the evidence. *See O'Carolan*, 71 S.W.3d at 533 n.4. Because appellee's testimony regarding appellant's income provided the trial court with information regarding appellant's net resources and because appellant failed to provide evidence refuting appellee's testimony regarding his net resources, we conclude that appellee's testimony regarding appellant's salary constitutes "some evidence of a substantive and probative character of net resources" and appellant's ability to pay child support. *Newberry*, 146 S.W.3d at 236 (citing TEX. FAM. CODE ANN. § 154.062); *see Zorilla*, 83 S.W.3d at 253. Thus, we conclude that the trial court did not abuse its discretion in awarding appellee $1,000 per month in child support. *See Rodriguez*, 860 S.W.2d at 415; *Worford*, 801 S.W.2d at 109; *see also Buhrle*, 210 S.W.3d at 717; *In re M.K.R.*, 216

14

S.W.3d 58, 61; *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 578 (Tex. App.–Houston [1st Dist.] 1997, pet. denied).

Appellant also challenges the award of $7,800 in retroactive child support, but he does not make a clear and concise argument for his contention that the trial court abused its discretion, nor does he cite to case law in support of his contention. As a result, we conclude that appellant has inadequately briefed this sub-issue. *See* TEX. R. APP. P. 38.1(i) ("The [appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Therefore, we overrule appellant's second issue.

## V. VISITATION

In his third issue, appellant argues that the trial court abused its discretion in depriving him of reasonable visitation with R.L. Specifically, appellant asserts that the trial court erroneously relied upon appellee's testimony, which was not credible and riddled with inconsistencies, and that the visitation order was "draconian." Appellee counters by arguing that the trial court did not abuse its discretion in deriving its visitation order because her testimony at the March 10, 2008 hearing was unequivocal and uncontradicted and that the evidence adduced at the hearing demonstrated that: (1) appellant rarely visits R.L.; (2) appellant and R.L. do not have a bond; (3) R.L. does not wish to spend nights with appellant; and (4) appellant does not intend to reside in the United States.

### A. Applicable Law

Trial courts are afforded wide discretion in making determinations of custody possession and visitation. *In re C.R.T.*, 61 S.W.3d 62, 65 (Tex. App.–Amarillo 2001, pet. denied) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). Abuse of the court's discretion is shown only when it acts without reference to any guiding rules or acts arbitrarily or unreasonably. *Id.* Our review must also give deference to the trial court because it is in the best position to observe the demeanor of the witnesses and evaluate their credibility. *In re De la Pena*, 999 S.W.2d 521, 526 (Tex. App.–El Paso 1999, no pet.).

15

An abuse of discretion ordinarily does not occur when the trial court bases its decision on conflicting evidence. *See In re K.R.P.*, 80 S.W.3d 669, 674 (Tex. App.–Houston [1st Dist.] 2002, pet. denied). Moreover, the evidence need not be compelling or conclusive to support the trial court's exercise of discretion. *See Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.–Houston [1st Dist.] 1993, writ denied) (holding that there was no abuse of discretion if some evidence of a substantive and probative character supported the decision); *see also Stevens v. Stevens*, No. 03-98-00687-CV, 1999 Tex. App. LEXIS 6334, at *6 (Tex. App.–Austin Aug. 26, 1999, no pet.) (mem. op.).

The best interest of the child is always the primary consideration in determining issues of conservatorship and possession. TEX. FAM. CODE ANN. § 153.002 (Vernon 2008). "It is the policy of this state to encourage frequent contact between a child and each parent for periods of possession that optimize the development of a close and continuing relationship between each parent and child." *Id.* § 153.251(b) (Vernon 2008). Yet, there is no requirement that joint managing conservators be awarded equal or nearly equal periods of possession. *Id.* § 153.135 (Vernon 2008); *Garza*, 217 S.W.3d at 552.

## B. Discussion

The crux of appellant's complaint pertaining to visitation is that the trial court relied solely upon appellee's testimony, which was allegedly unreliable and inconsistent. Here, appellee testified that appellant had continually worked in Afghanistan since R.L. was four years old. She further testified that as a result of appellant's absence, appellant and R.L. did not have a bond and that R.L. did not wish to spend the night with appellant. She did note that appellant usually returned to the United States to visit R.L. twice a year—for Christmas and R.L.'s birthday—and that appellant had only missed one of R.L.'s birthdays. However, appellee recalled the following with respect to the appellant's visits with R.L.:

| Q [Appellee's counsel]: | When he has come down and visits with him, does he spend all the time with him or not? |
|---|---|
| A [Appellee]: | No. I would say like maybe 15 minutes, you know, in the morning; 15 minutes maybe in the afternoon playing video games. But the majority |

16

> of the time he's [appellant] on his computer on his lap[ ]top.

She also noted that appellant expressed to her that he had no intention of moving back to the United States.

As noted earlier, we cannot say that appellee's testimony is inconsistent or unreliable. Moreover, as the fact finder, the trial court was in the best position to observe the demeanor of appellee and determine her credibility; thus, we must defer to the trial court's resolution of the evidence. *See In re De la Pena*, 999 S.W.2d at 526.

We now turn to appellant's contention that the visitation order was "draconian." In reviewing the portion of the final divorce decree regarding visitation, the trial court granted a standard visitation order with the following additional requirement, which appellant appears to complain about on appeal:

> There will not be any overnight visitation between [appellant] and [R.L.] as long as [appellant] is employed outside of the United States of America. After [appellant] returns to live in the United States of America and permanently established [sic] his residence in the United States of America, standard overnight visitation will be allowed.

Earlier in the decree, the trial court noted that there was credible evidence presented that: (1) appellant had previously threatened to take away appellee's right to access R.L.; (2) appellant lacks financial reason to stay in the United States; (3) appellant has strong "financial, emotional, or cultural ties to another country" where he is employed; and (4) appellant lacks strong ties to the United States. Thus, the trial court prohibited appellant from taking R.L. outside the United States.

On appeal, appellant cites the following statements made by the trial court at the hearing on appellee's emergency motion to modify visitation in arguing that the visitation order was "draconian":

> The important thing here, R.L., is, like I said, understand that the conflict between your mom and your dad is the conflict between your mom and your dad. It's not you. And your mom wants what's best for you. And I believe firmly that your daddy does, too. You know, work with it. Work with it. And let your dad know you love him, too. He's your dad.
>
> And mom knows you love her, too. Dad is maybe trying to make up

17

> for lost time because you have been—because he's been away. And you have to appreciate the fact that because he's been away working, maybe he's been able to provide a little bit better living for you and your mom. And I don't think there was any issue here with the Court that he has not been a provider for the family in the past.

Appellant then states that "[i]t is difficult to envision a single guiding principle relied upon by the trial court, including the 'best interest of the child' standard, after reviewing the record of his soliloquy . . . where he denied standard visitation to [appellant] until he resides permanently in the United States."

However, in reviewing appellant's arguments and the record on appeal, we cannot say that the trial court abused its discretion in rendering its visitation order. *See In re C.R.T.*, 61 S.W.3d at 65; *see also Holley*, 864 S.W.2d at 706. We find that the trial court was reasonable in imposing a restriction on appellant with respect to overnight visits given appellant's desire to remain overseas, often in locales mired in violence. *See* TEX. FAM. CODE ANN. § 153.001(a)(2) (Vernon 2008) (providing that, among other things, it is the public policy of this state to "provide a safe, stable, and *nonviolent* environment for the child . . . ") (emphasis added). Because the trial court did not abuse its discretion, we overrule appellant's third issue.

## VI. APPELLANT'S MOTION FOR CONTINUANCE

In his fourth issue, appellant argues that the trial court abused its discretion in denying the oral motion for continuance he made at the March 10, 2008 final hearing. The granting of a continuance rests within the sound discretion of the trial court. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002); *see also McClure v. Attebury*, 20 S.W.3d 722, 729 (Tex. App.–Amarillo 1999, no pet.) (holding that all courts have inherent power to grant or deny a continuance); *Humphrey v. Ahlschlager*, 778 S.W.2d 480, 482 (Tex. App.–Dallas 1989, no writ). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *BMC Software*, 83 S.W.3d at 800.

In his notice of appeal, appellant stated that he was solely appealing the trial court's

August 4, 2008 denial of his motion for new trial. However, on appeal, appellant also complains about the trial court's denial of his oral motion for continuance. Because appellant expressed in his notice of appeal that he was only appealing the trial court's denial of his motion for new trial, we focus our review solely on the contents of appellant's motion for new trial and the trial court's evaluation of the motion rather than appellant's extraneous arguments pertaining to the trial court's denial of his oral motion for continuance. *See* TEX. R. APP. P. 25.1(d)(2) (requiring appellant to specify the date of the judgment or order appealed from); *see also Parrish v. Rutherford*, 159 S.W.3d 114, 117 (Tex. App.–Corpus Christi 2004, no pet.) (holding that an issue was not preserved for appeal because appellants' notice of appeal failed to specify the order from which the purported issue arose).

Even assuming, arguendo, that appellant had properly preserved this issue for appeal, we note that the record does not contain an affidavit demonstrating sufficient cause for his requested continuance. *See* TEX. R. CIV. P. 251 ("No application for a continuance shall be heard before the defendant files his defense, nor shall any continuance be granted except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law."); *see also Mathew v. McCoy*, 847 S.W.2d 397, 399-400 (Tex. App.–Houston [14th Dist.] 1993, no writ) (holding that a motion for continuance must be verified and that the court of appeals must presume the trial court did not abuse its discretion in denying a motion for continuance that was not verified) (citing *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *City of Houston v. Blackbird*, 658 S.W.2d 269, 272 (Tex. App.–Houston [1st Dist.] 1983, writ dism'd)). Based on the foregoing, we overrule appellant's fourth issue.

## VII. CONCLUSION

Because we have concluded that the trial court's division of the community estate and calculation of child support, retroactive child support, and visitation were reasonable and supported by some evidence of substantive and probative character, we cannot say

19

that the trial court abused its discretion in denying appellant's motion for new trial. *See In re R.R.*, 209 S.W.3d at 114; *Ricks*, 169 S.W.3d at 526; *see also Garza*, 217 S.W.3d at 549; *Zorilla*, 83 S.W.3d at 252 n.1. Therefore, having overruled all of appellant's issues on appeal, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
17th day of December, 2009.